# EXHIBIT 1

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into between Caroline Pena (the "Named Plaintiff"), on behalf of herself individually and on behalf of a collective group of similarly situated individuals, on the one hand, and Home Care of Denver, LLC d/b/a/ All State Home Health and Jet Health, Inc. ("Defendants"), on the other hand.

Defendants and the Named Plaintiff (collectively, the "Settling Parties") agree to do all things and procedures reasonably necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by Defendants of the consideration expressed in this Agreement subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims as set forth in this Agreement; and (c) other valuable monetary and consideration as set forth in this Agreement. This Agreement is entered into voluntarily by the Settling Parties for settlement purposes only.

## RECITALS

**WHEREAS**, the Named Plaintiff has asserted claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Colorado Wage Claim Act (the "Wage Claim Act"), C.R.S. § 8-4-101, *et seq.*, and the Colorado Minimum Wage Act (the "CMWA"), C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Orders, 7 C.C.R. 1103-1, *et seq.*, based on the alleged failure to pay overtime compensation to the Named Plaintiff and others similarly situated; and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) that the Named Plaintiff and any Potential Opt-In Plaintiffs (as hereinafter defined) who opt in to the Litigation (as hereinafter defined) may have against Defendants; and

**WHEREAS**, Defendants deny that they have committed any wrongdoing or violated any

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

federal, state or local laws pertaining to payment of wages or hours worked, and further deny that they are liable or owe back wages or any overtime compensation to anyone with respect to the alleged facts or causes of action asserted in the Litigation; and

**WHEREAS**, Named Plaintiff and Defendants agreed to engage in discussions regarding the possibility of a voluntary resolution of the asserted FLSA and state wage and hour claims at issue; and

**WHEREAS**, the Settling Parties agreed to settle and resolve any and all claims that could be asserted in the Litigation pursuant to the terms of this Agreement, in order to avoid the burden, expense, risks and uncertainty of litigation; and

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, and intending to be legally bound, the Settling Parties hereto agree to a full and complete settlement of the Litigation and release of claims on the following terms and conditions:

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

**INDEX**

RECITALS .................................................................................................................1

I.      DEFINITIONS ...............................................................................................6

II.     SETTLEMENT APPROVAL PROCEDURE .............................................11

        A.      Filing Deadlines ................................................................................11

        B.      Agreement Null and Void Absent Approval ....................................11

III.    MODE, CALCULATION AND TIMING OF PAYMENT ........................11

        A.      Notice of Settlement .........................................................................11

        B.      Defendants' Payment Obligations ...................................................14

                1.      Gross Fund ..............................................................................14

                2.      Timing of Payment ................................................................14

        C.      Settlement Administration ..............................................................14

                1.      Settlement Administrator Responsibilities ..........................14

                2.      Reporting by Settlement Administrator ...............................15

        D.      Creation and Implementation of a Qualified Settlement Fund ......16

                1.      Establishing the Qualified Settlement Fund ........................16

                2.      Administering the Settlement Fund ......................................16

                3.      Tax Withholding and Reporting ...........................................16

                        a.      Employment Taxes ......................................................16

                        b.      Fund Taxes. ..................................................................17

                        c.      Other Payments and Indemnification .........................17

                        d.      Communication with Counsel .....................................17

        E.      Allocation of the Settlement Fund ...................................................18

                1.      Individual Settlement Awards ...............................................18

                2.      Settlement Fund Fees and Expenses .....................................18

|  |  | 3. | Service Payment | 19 |
|  |  | 4. | Attorneys' Fees and Litigation Costs Amounts | 19 |
|  | F. | Payments to Potential Opt-In Plaintiffs |  | 20 |
|  |  | 1. | Timing of Payments | 20 |
|  |  | 2. | Taxes on the Individual Settlement Payments | 20 |
|  |  | 3. | Tax Advice | 20 |
|  |  | 4. | No Credit Toward Employee Benefits | 20 |
| IV. | RELEASES |  |  | 21 |
|  | A. | Release by Opt-In Plaintiffs |  | 21 |
|  | B. | General Release by Named Plaintiff |  | 21 |
| V. | NOTICES |  |  | 22 |
| VI. | REPRESENTATION BY COUNSEL |  |  | 22 |
| VII. | NO ADMISSION OF LIABILITY |  |  | 23 |
| VIII. | MODIFICATION OF AGREEMENT |  |  | 23 |
| IX. | CONSTRUCTION AND INTERPRETATION |  |  | 23 |
|  | A. | Entire Agreement |  | 23 |
|  | B. | No Reliance on Representations or Extrinsic Evidence |  | 24 |
|  | C. | Controlling Law |  | 24 |
|  | D. | Severability |  | 24 |
|  | E. | Circular 230 Disclaimer |  | 24 |
|  | F. | Named Plaintiff's Waiver of Right to Be Excluded |  | 25 |
|  | G. | Captions |  | 25 |
|  | H. | Mutual Preparation |  | 26 |
| X. | COUNTERPARTS |  |  | 26 |
| XI. | BINDING EFFECT |  |  | 26 |

**XII.    ATTORNEY FEES, COSTS AND EXPENSES** .................................................. **27**

**XIII.    AUTHORITY OF COUNSEL** ........................................................................... **27**

    **A.    Facsimile, Electronic, and Email Signatures** ................................. **27**

    **B.    Voluntary Signature** ........................................................................ **27**

    **C.    Warranty of Counsel** ....................................................................... **27**

**XIV.    WAIVER OF APPEAL** ................................................................................... **28**

**XV.    CONTINUING JURISDICTION** ................................................................... **28**

## I.    DEFINITIONS

A.    "Agreement" means this Joint Stipulation of Settlement and Release.

B.    "Applicable Class Period" means the period of time between January 9, 2016 and the date this Agreement is executed by all Settling Parties.

C.    "Approval Order" means the Court's order approving the Agreement and dismissing the Litigation without prejudice, which shall convert to with prejudice on the date Plaintiffs' Counsel files the opt-in consents and releases contained on the negotiated settlement checks with the Court.

D.    "Attorneys' Fees" means the attorneys' fees payable to Plaintiffs' Counsel in connection with the Litigation, which the Court approves.

E.    "Consent Motion" means the Motion for Order Approving Settlement of Collective Action.

F.    "Court" means the U.S. District Court of the District of Colorado, assigned to the Litigation.

G.    "Defendants" means Home Care of Denver, LLC d/b/a/ All State Home Health ("All State") and Jet Health, Inc.

H.    "Defense Counsel" means John T. Egley and Morgan E. Podruski of Call & Jensen, APC, 610 Newport Center Drive, Suite 700, Newport Beach, California 92660.

I.    "Effective Date" means the first business day after the date that the Approval Order becomes final. For purposes of this definition, the Approval Order "becomes final" upon the date the Court enters approval of the Agreement.  In the event that the Court does not approve the Agreement and/or does not enter an Approval Order, then there shall be no Effective Date.

J.    "Employer's Share of Payroll Taxes" means the employer's share of federal, state and local payroll taxes or contributions imposed by applicable law (i.e. the employer's share of all

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

FICA, FUTA, SUTA, Medicare, and/or state unemployment taxes).

K.      "Gross Fund" means the maximum amount of One Hundred and Thirty Thousand Dollars ($130,000.00) that Defendants shall pay to settle the Litigation, including all Settlement Awards, Service Payment, Attorneys' Fees, Litigation Costs, and Settlement Administration Costs, but excluding the Employer's Share of Payroll Taxes.

L.      "Individual Settlement Award" means the amount of each Potential Opt-In Plaintiff's portion of the Net Settlement Fund prior to the withholding of the employee's share of taxes as set forth in Section III.F.2 below, which the Settlement Administrator calculates pursuant to the allocation method set forth in this Agreement.

M.      "Litigation" means the civil action filed by Named Plaintiff in the U.S. District Court for the District of Colorado entitled *Pena, et al. v. Home Care of Denver LLC, d/b/a/ All State Home Health, et al.*, Case No. 1:19-cv-00069-CMA-NYW.

N.      "Litigation Costs" means the reasonable costs and expenses incurred by Plaintiffs' Counsel in connection with the Litigation.

O.      "Named Plaintiff" means Caroline Pena.

P.      "Net Settlement Fund" means the remainder of the Gross Fund after deductions for: (i) a Service Payment awarded by the Court; (ii) Attorneys' Fees awarded by the Court; (iii) Litigation Costs awarded by the Court; and (iv) the Settlement Administration Costs.

Q.      "Notice of Settlement" means the notice of collective action settlement (attached as Exhibit A) that will be directed to the Potential Opt-In Plaintiffs. The Notice of Settlement will provide a summary of the Litigation, a summary of the Settlement Agreement, information on how Potential Opt-In Plaintiffs can opt-in to or not opt-in to the settlement by cashing or not cashing the enclosed settlement check, and the scope of the release if the individual chooses to opt-in to

the settlement by cashing the settlement check.

R.      "Opt-In Plaintiffs" means the Potential Opt-In Plaintiffs who consent to join the FLSA collective action and release their Released Claims.

S.      "Plaintiffs' Counsel" means Stephan Zouras, LLP and The Law Offices of Brian D. Gonzales, PLLC.

T.      "Potential Opt-In Plaintiffs" and "Quasi-Salary Clinicians" means all present and former employees of All State who were employed as home health Clinicians (defined as Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers) during the Applicable Class Period, who were paid on a quasi-salary basis.

U.      "Released Claims" means any and all claims, charges, complaints, obligations, promises, agreements, suits, rights, costs, losses, liens, penalties, fines, wages, liquidated damages, restitutionary amounts, interest, punitive damages, controversies, liabilities, debts, demands, money owed, guarantees, expenses, back wages, attorneys' fees and costs, damages, actions or causes of action, of any nature, under state, federal, or local law, that were made or could have been made based on the facts alleged in the pleadings filed in the Litigation, which includes claims for failure to pay minimum, overtime, and regular wages (including claims under the FLSA, 29 U.S.C. § 201, *et seq.*, the Wage Claim Act, C.R.S. § 8-4-101, *et seq.*, and the CMWA, C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Orders, 7 C.C.R. 1103-1, *et seq.*) arising on or before the date this Agreement is executed by all Settling Parties, excluding claims for workers' compensation benefits or any of claims that may not be released by law.

V.      "Released Parties" means Defendants, their past, present, and future parent companies, subsidiaries, divisions, related or affiliated companies, owners, shareholders, officers,

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

officials, principals, partners, directors, employees, agents, attorneys, accountants, auditors, consultants, insurers, reinsurers, investors, predecessors in interest, successors and assigns, branches, units, heirs, representatives, beneficiaries, subrogees, executors, members, privies, administrators, fiduciaries, and trustees.

W.      "Reminder Notice" means a postcard to be sent to Potential Opt-In Plaintiffs who have not negotiated their Settlement Checks forty-five (45) days after the initial mailing of the Settlement Packet.

X.      "Service Payment" means the amount to be paid to the Named Plaintiff as payment for her efforts for the benefit of all Potential Opt-In Plaintiffs, including assisting Plaintiffs' counsel with the prosecution of the Litigation, and which is approved by the Court.

Y.      "Settlement Administration Costs" means all fees, expenses, and costs of the Settlement Administrator related directly or indirectly to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, legal and accounting advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards, preparation of tax returns (and the taxes associated with such tax returns), and any other related duties.

Z.      "Settlement Administrator" means Phoenix Class Action Administration Solutions, or any other third-party class action settlement administrator agreed to by the Settling Parties and approved by the Court for the purposes of administering this Settlement.  The Settling Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

AA.      "Settlement Fund" means a "Qualified Settlement Fund" as described in

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, to be established by the Settlement Administrator, titled "All State Home Health Settlement Fund," and into which Defendants will deposit the Gross Fund.

BB.    "Settlement Fund Taxes" means all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a Qualified Settlement Fund for federal and state income tax purposes.

CC.    "Settlement Fund Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities).

DD.    "Settlement Packet" means (i) the Notice of Settlement and (ii) the settlement check that will be mailed to the Potential Opt-In Plaintiffs.

EE.    "Settling Parties" means Defendants and the Named Plaintiff.

FF.    "Visit Rate" means the most recent rate Defendants paid each Potential Opt-In Plaintiff for a routine visit performed in excess of the base weekly requirement while they worked as Quasi-Salary Clinicians.

GG.    "Workweeks" means the number of weeks that Potential Opt-In Plaintiffs worked as Quasi-Salary Clinicians of All State during the Applicable Class Period.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## II.      SETTLEMENT APPROVAL PROCEDURE

A.      <u>Filing Deadlines</u>.  Within fourteen (14) calendar days of this Agreement being executed, Plaintiffs' Counsel shall file the Consent Motion (after providing Defense Counsel with a reasonable opportunity to review and comment), attaching this Agreement, the Approval Order, and the Notice of Settlement advising the Potential Opt-In Plaintiffs of the material terms and provisions of the Agreement and their rights with respect to this settlement.

B.      <u>Agreement Null and Void Absent Approval</u>.  If the settlement is not approved and/or does not become final for any reason, then this Agreement purporting to settle the Litigation shall become null and void *ab initio* (except for this provision) and this Agreement shall have no bearing on, and shall not be admissible in connection with the Litigation or any other litigation for any purpose, including without limitation, whether the Named Plaintiff is similarly situated to the Potential Opt-In Plaintiffs, and Defendants retain all defenses to the Litigation as if no Agreement had been reached.

## III.     MODE, CALCULATION AND TIMING OF PAYMENT

A.      <u>Notice of Settlement</u>.

1.      Within fourteen (14) calendar days after the Effective Date, Defendants shall provide the Settlement Administrator and Plaintiffs' Counsel with, as to each Potential Opt-In Plaintiff: 1) name; 2) identification number previously assigned and disclosed to Plaintiffs' Counsel; 3) last known home address; 4) last known email address; 5) last known telephone number; 6) social security number; 7) the number of Workweeks; and 8) the most recent Visit Rate. Upon request from Plaintiffs' Counsel, Defendants agree to provide documentation to support Defendants' determination of Workweeks and the Visit Rate for the Named Plaintiff or any individual Potential Opt-In Plaintiff. Prior to the mailing of the Settlement Packet to the

Potential Opt-In Plaintiffs, the Settlement Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database and shall mail the Settlement Packet to any updated address obtained therefrom.

2.      Within twenty-one (21) calendar days after receiving the above-mentioned list of Potential Opt-In Plaintiffs, the Settlement Administrator shall mail, via First Class U.S Mail, in one mailing, all Settlement Packets, including the Notice of Settlement and settlement checks. The Potential Opt-In Plaintiffs will be provided with a summary of the basis for settlement in the Notice of Settlement and told that their endorsement of the settlement check will indicate their consent to join the FLSA collective action, participate in the settlement, and release their Released Claims.  To the extent there are matters not covered in the Notice of Settlement or to the extent the Notice of Settlement is inconsistent with this Agreement, this Agreement shall govern and control.

3.      The back of the settlement checks mailed in the Settlement Packets shall state as follows: "By endorsing this check, I hereby consent to join the lawsuit captioned *Pena, et al. v. Home Care of Denver LLC, d/b/a/ All State Home Health, et al.*, Case No. 1:19-cv-00069-CMA-NYW, pending in the United States District Court for the District of Colorado, agree to be bound by the Settlement Agreement negotiated by parties in that case, and release all federal and state wage and hour claims as described in the notice I received, and I authorize Plaintiffs' Counsel to file this consent to join with the Court on my behalf."

4.      If any Settlement Packet is returned as undeliverable without any indication of a more current address, the Settlement Administrator will undertake reasonable efforts to identify a current address and, if one is so identified, will mail the Settlement Packet to the new address.

5.      Forty-five (45) days after the initial mailing of the Settlement Packets, the

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

Settlement Administrator shall send a Reminder Notice to the Potential Opt-In Plaintiffs who have not yet cashed their settlement checks, reminding them of their eligibility to participate in the settlement by negotiating their settlement checks.

6.      The Settlement Administrator will notify Plaintiffs' Counsel and Defense Counsel within three (3) days of any dispute raised by a Potential Opt-In Plaintiff.  In the event of any dispute over a Potential Opt-In Plaintiff's Settlement Award, Plaintiffs' Counsel and Defense Counsel will confer in good faith in an effort to resolve the dispute, and if Plaintiffs' Counsel and Defense Counsel are unable to reach an agreement, the Settlement Administrator shall resolve the issue based on information made available to the Settlement Administrator by the Settling Parties and the Potential Opt-In Plaintiff. Any additional payment due as a result of any changes to a disputed Individual Settlement Award shall be deducted from any unclaimed amounts, or if no such amounts exist, shall be paid by Defendants separate from the Gross Fund.

7.      Potential Opt-In Plaintiffs will have seventy-five (75) days after the mailing of their Settlement Packets to cash their settlement checks.  If any Potential Opt-In Plaintiff's settlement check is not cashed within 75 days, any unclaimed amounts shall be returned to Defendants.

8.      Within ten (10) days after the deadline for cashing the settlement checks, the Settlement Administrator shall provide to Defense Counsel and Plaintiffs' Counsel electronic copies of all timely cashed checks.  Plaintiffs' Counsel will file the opt-in consents and releases contained on the negotiated settlement checks with the Court.

9.      At the conclusion of the settlement administration process, the Settlement Administrator shall also provide Defense Counsel and Plaintiffs' Counsel with a register listing all Opt-In Plaintiffs who timely cashed their settlement checks, including a master summary of Forms

1099 and W-2 amounts reported and tax withholdings. The Settlement Administrator will maintain an electronic copy of such tax payments, filings and forms for the period required by law.

      B.    <u>Defendants' Payment Obligations</u>.

            1.    <u>Gross Fund</u>. In consideration for the dismissal with prejudice of the Litigation and the release of claims by Named Plaintiff and Opt-In Plaintiffs and other good and valuable consideration, Defendants shall pay the Gross Fund to settle the Litigation. The Gross Fund shall be all that the Defendants or Released Parties shall pay to settle the Litigation, with the sole exception of the Employer's Share of Payroll Taxes. The Gross Fund is exclusive of any and all interest or investment income accrued on the Settlement Fund, which accrued interest/income shall revert to Defendants. All undistributed, unclaimed and/or unpaid amounts from the Net Settlement Fund as described in this Agreement after completion of the settlement process shall be returned to Defendants, as set forth in Section III.A.7, above.

            2.    <u>Timing of Payment</u>. Within ten (10) days after the Effective Date and Defense Counsel's receipt of wire information, Defendants shall pay the full amount of the Gross Fund by wire transfer to the Settlement Fund to be established by the Settlement Administrator.

      C.    <u>Settlement Administration</u>.

            1.    <u>Settlement Administrator Responsibilities</u>. The Settlement Administrator shall be responsible for: (a) finalizing the calculations of the Settlement Awards for the Named Plaintiff and the Potential Opt-In Plaintiffs based on the terms of this Agreement, as well as the tax withholding amounts and the Employer's Share of Payroll Taxes; (b) preparing, printing and disseminating to the Potential Opt-In Plaintiffs the Settlement Packet and the Reminder Notice; (c) copying counsel for all Settling Parties on material correspondence and promptly notifying all counsel for the Settling Parties of any material requests or communications made by any Settling

Party or Potential Opt-In Plaintiff; (d) receiving and reviewing the cashed checks for Opt-In

Plaintiffs; (e) wiring Plaintiffs' Counsel's Attorneys' Fees and Litigation Costs, and mailing the

Service Payment in accordance with this Agreement and order of the Court; (f) remitting the

Employer's Share of Payroll Taxes in accordance with this Agreement; (g) issuing W-2 and 1099

Forms for the Settlement Awards paid to Opt-In Plaintiffs, issuing a 1099 Form for the Service

Payment, Attorneys' Fees, and Litigation Costs and making all required Settlement Fund Tax

filings; (h) ascertaining current address and addressee information for each Settlement Packet

returned as undeliverable; (i) referring all inquiries by Potential Opt-In Plaintiffs the Settlement

Administrator cannot resolve and/or which involve matters not within the Settlement

Administrator's duties specified herein to Plaintiffs' Counsel and Defense Counsel; (j) responding

to inquiries of Plaintiffs' Counsel or Defense Counsel; (k) promptly apprising counsel for the

Settling Parties of the activities of the Settlement Administrator; (l) maintaining adequate records

of its activities, including the date of the mailing of the Settlement Packets, returned mail and other

communications and attempted written or electronic communications with the Potential Opt-In

Plaintiffs, and providing counsel for the Settling Parties with weekly reports regarding the same;

(m) confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the

administration of the settlement and retaining copies of all cashed settlement checks; (n) timely

responding to communications from the Settling Parties or their counsel; and (o) such other tasks

as are customarily and regularly performed by a settlement administrator and as the Settling Parties

mutually agree.

      2.    <u>Reporting by Settlement Administrator</u>.  Throughout the period of

settlement administration, the Settlement Administrator will provide such reports to the Settling

Parties upon request by either Settling Party, regarding the status of the mailing of the Settlement

Packets to Potential Opt-In Plaintiffs, the receipt of cashed settlement checks, or any other aspect of the settlement administration process.

    D.    <u>Creation and Implementation of a Qualified Settlement Fund</u>.

    1.    <u>Establishing the Qualified Settlement Fund</u>.  The Gross Fund will be deposited in the Settlement Fund, intended by the Settling Parties to be a Qualified Settlement Fund as described in Section 458B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B, *et seq.* The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 486B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.,* and shall be administered consistent therewith by the Settlement Administrator.

    2.    <u>Administering the Settlement Fund</u>.  The Settlement Administrator shall serve as trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund, including the handling of tax-related issues and payments.  The Settlement Administrator shall act in a manner necessary to qualify the Settlement Fund as a Qualified Settlement Fund and to maintain that qualification.  The Settling Parties and the Settlement Administrator shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

    3.    <u>Tax Withholding and Reporting</u>.

    a.    <u>Employment Taxes</u>.  The Settling Parties recognize that the Settlement Awards to Opt-In Plaintiffs will be subject to applicable tax withholding and reporting and employer payroll taxes**.** The Settlement Administrator shall be responsible for withholding, timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes to be withheld from the Settlement Award of each Opt-In Plaintiff. Defendants shall be

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

responsible for paying, and the Settlement Administrator shall be responsible for remitting and reporting to the appropriate taxing authorities, the Employer's Share of Payroll Taxes for the Settlement Award of each Opt-In Plaintiff. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Settling Parties anticipate that any amounts designated as a Service Payment, Attorneys' Fees, and Litigation Costs shall not be subject to withholding and shall be reported to the IRS on Forms 1099.

   b. <u>Fund Taxes</u>. All Settlement Fund Taxes and Settlement Fund Tax Expenses shall be paid out of the Settlement Fund by the Settlement Administrator and the Settlement Administrator shall be responsible for all filings and reporting with respect to Settlement Fund Taxes. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Settlement Fund. The Settling Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary for the Settlement Administrator to carry out the provisions set forth in this Section.

   c. <u>Other Payments and Indemnification</u>. The Settlement Administrator shall satisfy from the Settlement Fund: all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and any and all taxes, penalties and other obligations with respect to the payments or distributions not otherwise addressed in this Agreement. The Settlement Administrator shall indemnify the Settling Parties for any penalty, interest, or attorneys' fees arising out of an incorrect calculation or late deposit of the same.

   d. <u>Communication with Counsel</u>. Defense Counsel and Plaintiffs' Counsel are authorized to communicate directly with the Settlement Administrator to expedite the

settlement administration process.

    E.    <u>Allocation of the Settlement Fund</u>.

    1.    <u>Individual Settlement Awards</u>.  Individual Settlement Awards shall be calculated and apportioned from the Net Settlement Fund based on each Potential Opt-In Plaintiff's individual Workweeks and most recent Visit Rate.  Specific calculations of Individual Settlement Awards shall be made as follows:

    a.    The Settlement Administrator will multiply the number of Workweeks by the most recent Visit Rate for each Potential Opt-In Plaintiff. This calculation will yield a "Weighted Settlement Share" for each Potential Opt-In Plaintiff.

    b.    The Settlement Administrator will divide the Net Settlement Fund by the total Weighted Settlement Shares for all Potential Opt-In Plaintiffs.  This calculation will yield the "Amount Per Share."

    c.    Next, the Settlement Administrator will multiply the Amount Per Share by a given Potential Opt-In Plaintiff's Weighted Settlement Share to arrive at that Potential Opt-In Plaintiff's Individual Settlement Award.

    d.    The Individual Settlement Award will be subject to reduction for the employee's share of taxes and withholdings with respect to the portion of the payment that is deemed wages, and the payment to a Potential Opt-In Plaintiff that is net of these taxes and withholdings is the settlement check amount.

    e.    All Individual Settlement Awards not claimed by Potential Opt-In Plaintiffs by negotiating their settlement checks shall be returned to the Defendants, as set forth in Section III.A.7 above.

    2.    <u>Settlement Fund Fees and Expenses</u>.  Settlement Administration Costs in an

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

amount to be determined, but estimated to be $2,500.00, shall be paid from the Settlement Fund.

       3.      <u>Service Payment</u>.  Plaintiffs' Counsel shall seek Court approval of a service payment of $5,000.00 to the Named Plaintiff.  Defendants will not oppose such motion.  The settlement is not conditioned upon the Court's approval of the requested service payment.  The Settlement Administrator will not withhold taxes from the Service Payment, but will report the Service Payment on an IRS Form 1099. Within twenty-one (21) days after the Effective Date, the Settlement Administrator shall pay to the Named Plaintiff the Service Payment approved by the Court.

       4.      <u>Attorneys' Fees and Litigation Costs Amounts</u>.  Plaintiffs' Counsel shall make an application to the Court for an award of attorneys' fees in the amount of 35% of the Gross Fund ($45,500.00).  In addition, Plaintiffs' Counsel shall make an application to the Court for $1,947.32 in litigation costs.  Defendants will not oppose Plaintiffs' Counsel's request for attorneys' fees and litigation costs.  The settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's petition for attorneys' fees and litigation costs in the stated amounts. Payment of such approved Attorneys' Fees and Litigation Costs to Plaintiffs' Counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on behalf of the Named Plaintiff and any Opt-In Plaintiff.  The Settlement Administrator shall report the payment of the Attorneys' Fees and Litigation Costs to Plaintiffs' Counsel on an IRS Form 1099.  Within twenty-one (21) days after the Effective Date, the Settlement Administrator shall pay to Plaintiffs' Counsel, by wire transfer, the amount of Attorneys' Fees and Litigation Costs approved by the Court.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

      F.    <u>Payments to Potential Opt-In Plaintiffs</u>.

      1.    <u>Timing of Payments</u>.  The Settlement Administrator will transmit the checks for the Settlement Awards to the Potential Opt-In Plaintiffs in the Settlement Packets, in accordance with the withholding and reporting requirements set forth below.

      2.    <u>Taxes on the Individual Settlement Payments</u>.  The Settlement Awards to Potential Opt-In Plaintiffs shall be allocated 40% to back wages and 60% to liquidated damages. The back wages shall be subject to all required employee paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.).  The liquidated damages and any Service Payment shall be treated as non-wage income.  The Settlement Administrator shall report the back-wage payments to the Internal Revenue Service ("IRS") on IRS Forms W-2 and shall report the liquidated damages and Service Payment on IRS Forms 1099.

      3.    <u>Tax Advice</u>.  Named Plaintiff acknowledges and agrees that she has not relied upon any advice from Defendants or Plaintiffs' Counsel as to the taxability of the payments received pursuant to this Agreement.  Named Plaintiff and Opt-In Plaintiffs will be responsible for taxes due by them on the Settlement Awards and/or Service Payment.

      4.    <u>No Credit Toward Employee Benefits</u>.  The Individual Settlement Awards made pursuant to this Agreement shall not be utilized to calculate any additional benefits under any benefit plans to which any Potential Opt-In Plaintiffs may be eligible, including, but not limited to: profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan.  Rather, it is the Settling Parties' intention that this Settlement will not affect any rights, contributions, or amounts to which any Potential

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

Opt-In Plaintiffs may be entitled under any benefit plans.

## IV.    RELEASES

A.    <u>Release by Opt-In Plaintiffs</u>.  Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, the Opt-In Plaintiffs and the Named Plaintiff shall have waived, released and forever discharged the Released Parties from the Released Claims.

B.    <u>General Release by Named Plaintiff</u>.  In the event the Court approves a Service Payment, Named Plaintiff additionally hereby generally releases and discharges the Released Parties from any and all claims, demands, obligations, causes of action, rights, or liabilities of any kind which have been or could have been asserted against the Released Parties arising out of or relating to Named Plaintiff's employment by Defendants or termination thereof, including but not limited to claims for wages, restitution, penalties, retaliation, wrongful termination of employment, discrimination and/or harassment on the basis of any protected characteristic, failure to accommodate disability, failure to engage in the interactive process, alleged violations of any other state or federal or common law, and any other claims whatsoever, including any interest thereon. This release specifically includes any and all claims, demands, obligations and/or causes of action relating to or in any way connected with the matters referred to herein, whether or not known or suspected to exist, and whether or not specifically or particularly described herein.  Thus, Named Plaintiff expressly waives any right or claim or right to assert hereafter that any claim, demand, obligation, and/or cause of action has, through ignorance, oversight, or error, been omitted from the terms of this Agreement.  The release of claims set forth in this Paragraph does not include claims for Workers' Compensation benefits or any claims that may not be released by law.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## V.    NOTICES

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: (312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

Brian D. Gonzales
The Law Offices of Brian D. Gonzales, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, CO 80528
Tel: (970) 214-0562
bgonzales@coloradowagelaw.com

Counsel for Defendants:

John T. Egley
Morgan E. Podruski
Call & Jensen APC
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: (949) 717-3000
jegley@calljensen.com
mpodruski@calljensen.com

## VI.    REPRESENTATION BY COUNSEL

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## VII.    NO ADMISSION OF LIABILITY

Defendants enter into this Agreement to avoid further expense and disruption to their business.  The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement are denied and disputed by Defendants.  This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances.  The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute with respect to any person or entity.  Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

## VIII.    MODIFICATION OF AGREEMENT

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

## IX.    CONSTRUCTION AND INTERPRETATION

A.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter contained herein and shall supersede all prior and contemporaneous negotiations between the parties.

This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof.  The Named Plaintiff and Defendants participated in the negotiation and drafting of this Agreement and had available to

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

them the advice and assistance of independent counsel. As such, neither the Named Plaintiff nor

Defendants may claim that any ambiguity in this Agreement should be construed against the other.

B.      <u>No Reliance on Representations or Extrinsic Evidence</u>.  Except as expressly

provided herein, this Agreement has not been executed in reliance upon any other oral or written

representations or terms, and no such extrinsic oral or written representations or terms shall modify,

vary or contradict its terms.  In entering into this Agreement, the Settling Parties agree that this

Agreement is to be construed according to its terms and may not be varied or contradicted by

extrinsic evidence.

C.      <u>Controlling Law</u>.  This Agreement shall be subject to, governed by, construed,

enforced and administered in accordance with the laws of the State of Colorado, both in its

procedural and substantive aspects, and without regard for the principle of conflict of laws.

D.      <u>Severability</u>.  If any provision of this Agreement is held by a court of competent

jurisdiction to be void, voidable, unlawful or unenforceable, except the Release, the remaining

portions of this Agreement will remain in full force and effect to the extent that the effect of the

Agreement remains materially the same and the obligations of the Settling Parties remain

materially the same.

E.      <u>Circular 230 Disclaimer</u>.  EACH PARTY TO THIS AGREEMENT (FOR

PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO

THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER

PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS

AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR

AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS

INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE

CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE

MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR

PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED

EXCLUSIVELY UPON HIS, HER OR ITS OWN INDEPENDENT LEGAL AND TAX

COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS

AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE

RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO

ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY

COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY

OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE

ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER

PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF

ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF

WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE

ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY

TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS

AGREEMENT.

      F.     <u>Named Plaintiff's Waiver of Right to Be Excluded</u>.  Named Plaintiff agrees to sign

this Settlement Agreement and, by signing this Settlement Agreement, is hereby bound by the

terms herein.  Efforts by Named Plaintiff to circumvent the terms of this Paragraph will be void

and of no force or effect.

      G.     <u>Captions</u>.  The captions and section numbers in this Agreement are inserted for the

reader's convenience, and in no way define, limit, construe, or describe the scope or intent of the

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

provisions of this Agreement.

H. <u>Mutual Preparation</u>. The Settling Parties have had a full opportunity to negotiate the terms and conditions of this Agreement. Accordingly, this Agreement will not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Settling Parties, it being recognized that, because of the arms-length negotiations between the Settling Parties, all Settling Parties have contributed to the preparation of this Agreement.

## X.      COUNTERPARTS

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XI.     BINDING EFFECT

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Defendants as well as the Released Parties. Also without limiting the foregoing, this Agreement shall be binding upon the heirs, assigns, administrators, executors, beneficiaries, conservators, and successors of the Named Plaintiff and all Opt-In Plaintiffs.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## XII.    ATTORNEY FEES, COSTS AND EXPENSES

Except as otherwise specifically provided herein, the Settling Parties shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of the Litigation and shall not seek reimbursement thereof from any party to this Agreement.  However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

## XIII.    AUTHORITY OF COUNSEL

A.    <u>Facsimile, Electronic, and Email Signatures</u>.  Any Settling Party may execute this Agreement by signing on the designated signature block below and transmitting that signature page *via* facsimile, email, or other electronic means to counsel for the other Settling Party.  Any signature made and transmitted by facsimile, email or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Settling Party whose counsel transmits the signature page by facsimile or email.

B.    <u>Voluntary Signature</u>.  All Settling Parties agree that they have signed this Agreement knowingly, voluntarily, with full knowledge of its significance, and without coercion.

C.    <u>Warranty of Counsel</u>.  Plaintiffs' Counsel warrant and represent that they are expressly authorized by the Named Plaintiff to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms.  Defense Counsel warrants and represents that they are authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to this Agreement in order to effectuate its terms.

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## XIV.  WAIVER OF APPEAL

Provided that the Approval Order is consistent with the terms and conditions of this Agreement in all material respects, the Settling Parties all hereby waive any and all rights to appeal from the Approval Order, including all rights to any post-judgment proceedings, such as a motion to vacate or set-aside judgment, a motion for a new trial, and any extraordinary writ, and the Approval Order will become final and non-appealable at the time it is entered.  The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.


## XV.    CONTINUING JURISDICTION

The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement until all payments and obligations contemplated by the settlement have been fully carried out.  This retention of jurisdiction encompasses any disagreement among the Settling Parties concerning the final forms of the Notice of Settlement or other documents necessary to implement this Agreement, and all other disputes regarding the Agreement and its implementation.  Any action to enforce this Agreement shall be commenced and maintained in this Court.


## REMAINDER OF PAGE LEFT BLANK

**THE UNDERSIGNED HAVE CAREFULLY READ THE ABOVE TERMS BEFORE**

**SIGNING, AND HEREBY AGREE TO THE ABOVE TERMS.**

| DATED: 6-26-2020 | HOME CARE OF DENVER, LLC D/B/A/ ALL STATE HOME HEALTH AND JET HEALTH, INC. By: _____ Its: PRESIDENT |
|---|---|
| DATED: _____ | CAROLINE PENA: _____ |

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

**THE UNDERSIGNED HAVE CAREFULLY READ THE ABOVE TERMS BEFORE**

**SIGNING, AND HEREBY AGREE TO THE ABOVE TERMS.**

| | |
|---|---|
| DATED: _____ | HOME CARE OF DENVER, LLC D/B/A/ ALL STATE HOME HEALTH AND JET HEALTH, INC.<br><br><br>By: _____<br><br><br>Its: _____ |

| | |
|---|---|
| DATED: ___6/16/2020___ | CAROLINE PENA:<br><br>DocuSigned by:<br>_____  _____<br>3CA6483137FC4DF... |

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

# EXHIBIT A

DocuSign Envelope ID: 5F937329-6706-4752-BFDB-E11312C86947

## NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT

### *Pena, et al. v. Home Care of Denver LLC, d/b/a/ All State Home Health, et al.*
Case No. 1:19-cv-00069-CMA-NYW, United States District Court, District of Colorado

---

**As a home health Clinician who worked for All State Home Health and was paid on a quasi-salary basis,
you are eligible for a payment from a collective action lawsuit settlement.**

**A federal court authorized this notice. This is not a solicitation from a lawyer.**

The Court in the above-referenced collective action lawsuit regarding overtime claims against Home Care of Denver LLC, d/b/a/ All State Home Health ("All State") has approved a settlement. Because your rights may be affected by this settlement, it is extremely important that you read this Notice carefully.

## SUMMARY

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **CASH THE ENCLOSED SETTLEMENT CHECK** | By cashing, depositing, or otherwise negotiating the enclosed settlement check, you agree to participate in the settlement, opt-in to the collective action, and release your claims, as explained below. |
| **DO NOT CASH THE SETTLEMENT CHECK** | If you do not wish to participate in, or be bound by, the settlement, you should not cash the enclosed settlement check. |

**1. Why did I get this notice?**

All State's records show that you worked as a home health Clinician between January 9, 2016 and [date of execution of Settlement Agreement], were paid on a quasi-salary basis, and may not have been paid overtime compensation at 1 ½ times your regular hourly rate for time worked in excess of 40 hours in given workweeks.

The Court ordered that you be sent this notice because you have a right to know about a settlement of a collective action lawsuit and about all of your options. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available to you.

**2. What is this lawsuit about?**

This lawsuit is about whether All State was required to pay home health Clinicians overtime premium pay for the time they worked in excess of 40 hours per week. An employee filed this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA") and class action under Colorado state law. The person who filed the lawsuit is called the "Plaintiff." All State and Jet Health, Inc. are called the "Defendants." The Court overseeing this case is the United States District Court for the District of Colorado.

All State denies it did anything wrong and believes that home health Clinicians were properly compensated. The parties have entered into this settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. The Court has not made any ruling on the merits of the Plaintiff's claims or Defendants' defenses.

| 3. What is a collective action? |
|---|

In a "collective action," the Plaintiff sues on behalf of people who have similar claims. However, people with similar claims do not become part of the collective action until they opt into the collective action. You may opt into the collective action and become a "Collective Action Member" by cashing the enclosed settlement check by [75 days from mailing of Notice].

| 4. Why is there a settlement? |
|---|

The Court did not decide in favor of the Plaintiff or Defendants. Both sides believe they would have prevailed in this case, but there was no decision ruling in favor of either party. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Plaintiff and her attorneys think this settlement is best for all Collective Action Members.

## WHO IS IN THE SETTLEMENT

| 5. How do I know if I will be included in the settlement? |
|---|

You will be included in the settlement if you cash the enclosed settlement payment by [75 days from mailing of Notice].

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 6. What does the settlement provide? |
|---|

All State has agreed to pay a total of $130,000.00 to settle the case. The settlement funds are being used to pay Collective Action Members, as well as to pay attorneys' fees and costs, provide a payment to the Plaintiff for her service in the collective action, and pay the costs of administering the settlement.

After the deductions described above, the settlement funds were divided proportionately among home health Clinicians who are covered by the settlement based on each Clinician's most recent visit rate and the number of weeks you worked during the relevant time period.

| 7. How much will my payment be? |
|---|

Based on the formula that has been approved by the Court based on payroll and visit data from All State, your enclosed settlement payment is $[Amount]. Forty percent (40%) of this payment amount is subject to deductions for applicable taxes and withholdings like any other paycheck, for which you will receive an IRS Form W-2, and 60% is not subject to deductions and will be reported on an IRS Form 1099. Neither Plaintiffs' Counsel nor All State makes any representations concerning the tax consequences of this settlement or your participation in it, and you are advised to consult your own tax advisor if you have any questions regarding the tax treatment of any payments.

# How You Get a Payment

| **8. How can I get my payment?** |
|---|

Your settlement payment is enclosed. You have 75 calendar days from the date the check was mailed to cash/deposit your check. If you do not cash/deposit your check by [75 days from mailing of Notice], your settlement payment will be void, you will not receive another payment, and you will not be bound by the Release.

All unclaimed amounts remaining from uncashed checks after 75 calendar days will be returned to All State.

| **9. What am I giving up to receive a payment and join the collective action?** |
|---|

You will not become a member of the collective action unless you cash the enclosed settlement payment by [75 days from mailing of Notice]. Once you cash the enclosed settlement payment, you cannot sue, continue to sue, or be part of any other lawsuit against All State or any of the Released Parties for any and all claims, charges, complaints, obligations, promises, agreements, suits, rights, costs, losses, liens, penalties, fines, wages, liquidated damages, restitutionary amounts, interest, punitive damages, controversies, liabilities, debts, demands, money owed, guarantees, expenses, back wages, attorneys' fees and costs, damages, actions or causes of action, of any nature, under state, federal, or local law, that were made or could have been made based on the facts alleged in the pleadings filed in the Litigation, which includes claims for failure to pay minimum, overtime, and regular wages (including claims under the FLSA, 29 U.S.C. § 201, *et seq.*, the Wage Claim Act, C.R.S. § 8-4-101, *et seq.*, and the CMWA, C.R.S. § 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Orders, 7 C.C.R. 1103-1, *et seq.*) arising on or before [date of execution of Settlement Agreement], excluding claims for workers' compensation benefits or any of claims that may not be released by law. In addition, by timely cashing the enclosed settlement payment, all of the Court's orders will apply to you and legally bind you.

| **10. Am I protected from retaliation for participating in the settlement?** |
|---|

All State understands and acknowledges that it has a legal obligation not to retaliate against any Collective Action Member who elects to participate in the Settlement.

# Excluding Yourself From the Settlement

| **11. How do I exclude myself from the settlement?** |
|---|

If you don't want to opt-in to the collective action and participate in the settlement, and you want to keep the right to sue or continue to sue All State on your own about the legal issues in this case, then you should not cash the enclosed settlement payment. If you do not cash the settlement payment, you will not be legally bound by anything that happens in the lawsuit. You may also be able to sue (or continue to sue) All State in the future about the legal issues in this case. Please be advised that your claims are subject to statutes of limitations, which means they will expire on certain dates if you take no action. If you have a pending lawsuit against All State, speak to your lawyer in that case immediately to see if the settlement will affect your other case.

# The Lawyers Representing You

| **12. Do I have a lawyer in this case?** |
|---|

The Court has decided that the lawyers at the law firm of Stephan Zouras, LLP and The Law Offices of Brian D. Gonzales, PLLC are qualified to represent you and all Collective Action Members. These lawyers are called "Plaintiffs' Counsel." You will not be charged for these lawyers. You do not need to retain your own attorney in order to participate as a Collective Action Member.

| 13. How will the lawyers be paid? |
|---|

The Court has approved a payment of 35% of the settlement fund, or $45,500.00, to Plaintiffs' Counsel for attorneys' fees, plus reimbursement of their out-of-pocket costs and reasonable litigation expenses. These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating the settlement.

The Court has also approved payment of $5,000.00 to the Plaintiff who brought the lawsuit in recognition of the work she performed, the risks she took, and her service to the Collective Action Members. The attorneys' fees and costs, costs of the Settlement Administrator, and the service payment to the Plaintiff have been deducted from the settlement amount.

# GETTING MORE INFORMATION

| 14. Are there more details about the settlement? |
|---|

This Notice summarizes the settlement. For more information, you may review the pleadings and other records in this lawsuit, including the detailed Settlement Agreement, at the Records Office of the Clerk of the United States District Court, located at 901 19th Street, Denver, Colorado 80294.

| 15. How do I get more information? |
|---|

Any questions regarding the settlement should be directed to Plaintiffs' Counsel at the addresses and/or telephone numbers below. If your address changes, or is different from the one on the envelope enclosing this Notice, please promptly notify Plaintiffs' Counsel.

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Stephan Zouras, LLP
205 N. Michigan Ave, Suite 2560
Chicago, Illinois 60601
Tel: 312.233.1550
lawyers@stephanzouras.com
www.stephanzouras.com

Brian D. Gonzalez
The Law Offices of Brian D. Gonzales, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Tel: 970.214.0562

**PLEASE DO NOT CALL OR WRITE TO THE COURT ABOUT THIS NOTICE**