# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00069-CMA-NYW

CAROLINE PENA, *individually, and on behalf of all others similarly situated*,

　　Plaintiff,

v.

HOME CARE OF DENVER d/b/a ALL STATE HOME HEALTH, and
JET HEALTH, INC.

　　Defendant.

## ORDER ON JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Magistrate Judge Nina Y. Wang

　　This matter comes before the court on the Joint Motion for Approval of Settlement Agreement (or "Motion"), filed July 1, 2020. [#41]. The Motion is before the undersigned pursuant to the Parties' Consent to the disposition of the Motion by a magistrate judge and the Amended Memorandum referring the Motion for final disposition by the undersigned pursuant to D.C.COLO.LCivR 72.3(b). *See* [#41; #44]. Having reviewed the Motion, the applicable case law, and the entire docket, this court **GRANTS** the Motion for the reasons stated herein.

## BACKGROUND

　　Plaintiff Caroline Pena ("Plaintiff" or "Ms. Pena") initiated this collective and class action on January 9, 2019. [#1]. Ms. Pena asserts that Defendants Home Care of Denver, LLC d/b/a All State Home Health ("All State") and Jet Health, Inc. ("Jet Health") (collectively, "Defendants") "knowingly misclassif[ied] its Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, Medical Social

Workers[,] and other employees in other similarly-designated skilled care positions ('Clinicians') as overtime exempt and knowingly fail[ed] to them any overtime[.]" [*Id.* at ¶ 1]. Because Ms. Pena worked as a Registered Nurse for Defendants between January and September 2017 and did not receive overtime compensation for hours worked in excess of 40 per week, [*id.* at ¶ 8], she initiated this collective and class action on behalf of herself and all others similarly situated, asserting claims against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §§ 8-4-101 *et seq.*, and the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101 *et seq.* See generally [#1].

The presiding judge, the Honorable Christine M. Arguello, granted in part the Parties' Stipulation and Motion for an Order for Collective Action Notice on October 29, 2019. [#38]. Relevant here, Judge Arguello conditionally certified the following collective: "All present and former employees of All State Home Health who were employed as home health Clinicians (defined as Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers) at any time from May 10, 2016 through the present and who were paid on a quasi-salary basis." [*Id.* at 4]. Despite stipulating to the proposed Notice and Consent Form to be sent to putative opt-in plaintiffs, Judge Arguello directed the Parties' to amend the proposed Notice and Consent Form to include additional information necessary to fully and fairly advise putative opt-ins of their rights if they joined this collective action. *See* [*id.* at 4-8]. On November 14, 2019, Judge Arguello approved the Parties' Amended Notice and Consent Form. [#40].

Following conditional certification and the issuance of the Amended Notice and Consent Form, the Parties proceeded through discovery, yet no other putative opt-in filed with the court his or her consent to join this collective action despite eight such putative opt-ins identified by Plaintiff. *See* [#41 at 4]. The Parties filed the instant Motion on July 1, 2020, which was referred to this Magistrate Judge for final disposition upon consent of the Parties and order by Judge Arguello. [*Id.* at 1; #42; #44]. In it, the Parties seek a court order approving of the Settlement Agreement as it relates to Plaintiff's FLSA claim, which "provides that, on approval, a Settlement Administrator will administer a settlement fund in the amount of $130,000.00 to resolve the claims of the Plaintiff and eight Potential Opt-In Plaintiffs. All amounts to be paid by Defendants, including attorney's fees and settlement administration costs, will come out of the settlement fund." [*Id.* at 5]. Because this court could not conclude that the Parties demonstrated the reasonableness of the attorneys' fees award based on the record before it, I ordered the Parties to supplement the record in this regard. [#45]. The Parties have since supplemented the record, [#46], and I now turn to the Parties' arguments below.

**ANALYSIS**

Within the context of a lawsuit brought directly by employees against their employer under section 216(b) to recover unpaid wages or overtime under the FLSA, and upon consideration of whether the proposed settlement is fair, the district court may enter a stipulated judgment approving the agreement and dismissing the action. *Baker v. Vail Resorts Management Co.*, No. 13–cv–01649–PAB–CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982)). Approval is appropriate upon demonstration that (1) the litigation involves a

3

*bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker*, 2014 WL 700096, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1354).

However, a court in this District has called into question whether court approval for an FLSA settlement requires court approval, absent any special circumstance. *Ruiz v. Act Fast Delivery of Colorado*, Civil No. 14-cv-00870-MSK-NYW, ECF 132, (D. Colo. Jan. 9, 2017) (unpublished).[1]  Upon consideration of a motion to approve a settlement in an FLSA matter, the *Ruiz* court found that, with few exceptions, such settlements do not require court approval. *Id.* Because the issue is not yet settled by the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"), this court proceeds with applying the standard utilized by courts in this District to consider whether it can approve the settlement.

---

[1] The court notes that the *Ruiz* court does not stand alone on this issue. Courts outside of this District have similarly questioned whether judicial approval of FLSA settlements is required or even appropriate, observing that parties may, with certain exceptions, manage the resolution of their cases independent of judicial intervention under application of Rule 41 of the Federal Rules of Civil Procedure. *See Picerni v. Bilingual Seit & Preschool Inc.,* 925 F. Supp. 2d 368, 375 (E.D.N.Y. 2013); *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 618-31 (W.D. Tex. 2005).  In *Cheeks v. Freeport Pancake House, Inc.*, the Second Circuit addressed the issue in a matter of first impression and held that parties cannot enter into private settlements of FLSA claims without either the approval of the district court or the Department of Labor. 796 F.3d 199 (2d Cir. 2015) (determining that the FLSA is an "applicable federal statute" within the meaning of Rule 41, and thus an exception to the operation of Rule 41).  In reaching its decision, the *Cheeks* court considered the potential for abuse in FLSA settlements against the FLSA's underlying purpose "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work," and the Supreme Court's consistent efforts to "interpret[] the Act liberally and afford[] its protections exceptionally broad coverage."  *Id.* at 206 (citations omitted).  To this court's knowledge, the Tenth Circuit has not yet resolved the issue or otherwise provided guidance as to whether the FLSA falls within the federal statute exception to Rule 41.

4

### I. *Bona Fide* Dispute

For the court to discern whether a *bona fide* dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Baker*, 2014 WL 700096, at *1.

This court finds that the Parties adequately describe their dispute. As stated above, Plaintiff worked as a Registered Nurse for Defendants and maintains that she was knowingly misclassified as an overtime exempt employee. [#1 at ¶¶ 1, 8, 14-17, 25-29]. Plaintiff further asserts that Defendants implemented two "unlawful pay schemes" that failed to "meet the salary-basis requirement or the fee-basis requirement of the FLSA": "1) a quasi-salary-based compensation scheme; and 2) a hybrid per-visit and hourly compensation scheme." [*Id.* at ¶ 16]. Defendants, however, deny that Plaintiff was wrongly classified as an overtime exempt employee and generally deny that its compensation structure violated the FLSA. *See generally* [#19]. Thus, I conclude that a *bona fide* dispute led to the settlement negotiation and resulting terms.

### II. Fair and Equitable Settlement Agreement

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The "prime purpose" in enacting the FLSA "was to aid

5

the unprotected, unorganized and lowest paid . . . employees who lack[ ] sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945).  *See also Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2162 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours." (citation omitted)).  "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief . . . ."  *Felix v. Thai Basil at Thornton, Inc.*, No. 14–cv–02567–MSK–CBS, 2015 WL 2265177, at *2 (D. Colo. May. 6, 2015) (citation omitted).

        The Tenth Circuit considers the following factors in determining whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).  Courts in this District apply the same four factors to their review of a settlement agreement resolving FLSA claims in a collective and individual action.  *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130 (D. Colo. 2016); *Morton v. Transcend Service, Inc.*, No. 15–cv–01393–PAB–NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017).  *See also Albu v. Delta Mechanical Inc.*, No. 13–cv–03087–PAB–KMT,

2015 WL 4483992, at *3 (D. Colo. June 30, 2015) ("Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e)" (citations omitted)).

Under the terms of the Settlement Agreement Defendants agree to pay $130,000 to Plaintiff and the eight putative opt-in plaintiffs to fully resolve their FLSA and related Colorado claims. [#41-1 at 8, 15, 19-20]. Counsel represent that the total amount of the settlement, after the exclusion of attorneys' fees and costs and other expenses, will be $75,052.68 split among Plaintiff and the eight putative opt-in plaintiffs for roughly $8,339.19 per plaintiff (with Ms. Pena receiving an additional $5,000[2] as the collective representative). [#41 at 6]. Counsel indicate that the Settlement Agreement was "the product of arm's-length negotiations by experienced counsel and has the salutary effect of (1) providing substantial relief to Plaintiff and Potential Opt-In Plaintiffs, and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits." [#41 at 7]. The Parties are represented by counsel who assert that the terms of settlement are fair and reasonable, and the court finds no reason to question this assessment. The court also finds, based on the Parties' representations of their respective positions described above and upon its own review and familiarity with the case, that serious questions of law and fact exist which render the ultimate outcome

---

[2] No putative opt-in Plaintiff objects to this incentive fee to Ms. Pena, and courts in this District have approved significantly higher incentive fees in similar cases. *See, e.g.*, Jose Blanco, v. Xtreme Drilling & Coil Services, Inc., No. 16-CV-00249-PAB-SKC, 2020 WL 4041456, at *7 (D. Colo. July 17, 2020) (approving a $24,000 incentive fee); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding that $7,500 service award was "appropriate and...commensurate with awards in similar cases"); *Aragon v. Clear Water Prods., LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (approving $7,000 service award for the class representative). Thus, I find the $5,000 fee here to be reasonable.

7

of the litigation uncertain. I find that the value of recovery at this stage in the case outweighs the possibility of future relief for Plaintiff. And the court agrees with the Parties' assertion that the settlement is fair and reasonable and reflects an adequate compromise that considers the attendant risks for each party associated with proceeding with this litigation.

The court considers next whether the settlement agreement undermines the purpose of the FLSA, "which is to protect employees' rights from employers who generally wield superior bargaining power." *Morton*, 2017 WL 977812 at *2. Factors that may cause a court to reject a proposed settlement include (1) the presence of other employees similarly situated to the claimant, (2) a likelihood that the claimant's circumstance will recur, and (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region. *Id.* (citing *Dees v. Hydrady, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)). None of these concerns are present here. The settlement agreement is written for Plaintiff individually and the eight identified putative opt-ins covered by the conditionally certified collective by Judge Arguello—there are no further allegations of similarly situated employees. There is no indication that the alleged violations could recur and there is no indication that Defendants have a history of flouting FLSA requirements. I find that the settlement agreement does not run afoul of the policy concerns underpinning the FLSA.

### III. Attorney Fees

Finally, the court considers whether the amount provided for in the settlement agreement for Plaintiff's attorney's fees is reasonable. The settlement sets aside a sum of $45,500 (pursuant to the 35% contingency fee arrangement) for attorney's fees and

$1,947.32 costs, and possibly $2,500 for settlement administrator costs. [#41-1 at 19-20]. The Parties ask the court to approve $45,500 in attorney fees based on the 35% contingency fee arrangement between Plaintiff and her counsel. [#41 at 8]. The Parties assert that this amount is reasonable because the contingency rate "is well within the reasonable amount for such fees," and they cite to several cases from this District and others in the Tenth Circuit approving similar contingency fee arrangements. [*Id.*]. Because this court was not convinced that the Parties had demonstrated the reasonableness of the awarded attorneys' fees based solely on the contingency fee percentage, the undersigned allowed the Parties to supplement the record by July 17, 2020 in this regard. *See* [#45]. In her supplemental briefing, Plaintiff argues that the contingency fee arrangement is reasonable under the *Johnson* factors and when cross-referenced with the applicable lodestar amount. For the following reasons, I conclude the award of attorneys' fees is reasonable.

There is a general preference that parties reach an agreement regarding the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). However, the court must nonetheless conduct an independent examination of whether the fees are reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351–52 (11th Cir. 2009) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). "In assessing the reasonableness of the percentage of the common fund awarded to class counsel for attorneys' fees, courts within the Tenth Circuit weigh the twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*,

9

488 F.2d 714 (5th Cir. 1974)." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)).  These factors include:

   1. the time and labor required;

   2. the novelty and difficulty of the case;

   3. the skill requisite to perform the legal service properly;

   4. the preclusion of other employment by the attorneys due to acceptance of the case;

   5. the customary fee for similar work;

   6. whether the fee is fixed or contingent;

   7. any time limitations imposed by the client or the circumstances;

   8. the amount involved and the results obtained;

   9. the experience, reputation, and ability of the attorneys;

   10. the "undesirability" of the case;

   11. the nature and length of the professional relationship with the client; and

   12. awards in similar cases.

*Johnson*, 488 F.2d at 717-19.  Not one factor is dispositive, as the court may assign different relative weights to specific factors based on the circumstances of the case.  *Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 706 (D. Colo. 2007).  And the court need only consider those factors relevant to its determination.  *Gudenkauf v. Staffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

   "Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount."  *Faulkner v. Ensign United*

*States Drilling Inc.*, No. 16-CV-03137-PAB-KLM, 2020 WL 550592, at *6 (D. Colo. Feb. 4, 2020). The "lodestar amount" represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. The lodestar amount may be adjusted according to the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, or other factors. *See Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143, 147 (Colo. App. 1996). A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995). In order to satisfy this burden, Plaintiff must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). The court may adjust the rates suggested by counsel based on its own familiarity with the range of prevailing rates in the Denver, Colorado market. *Guides, Ltd.*, 295 F.3d at 1079. In addition, the Local Rules of Civil Practice for this District requires that a motion for attorney's fees be supported by affidavit. D.C.COLO.LCivR 54.3.

### A.  *Johnson* Factors

#### 1.  Time and Labor Required (Factor 1)

Plaintiff's counsel represents that they spent "nearly 200 hours litigating this case" since its filing roughly 18 months ago. [#46-1 at ¶¶ 18-19]. In that time, Plaintiff's counsel attests that they "investigat[ed] the claims, draft[ed] the complaint, review[ed] hundreds of pages of pay records and home health visit data, attend[ed] meetings and conferences, prepar[ed] damages models, participat[ed] in settlement negotiations, draft[ed] the stipulation for conditional certification, negotiate[ed] and draft[ed] the Settlement Agreement, and work[ed] with defense counsel to ensure approval of the settlement." [*Id.* at ¶ 24]; *see also* [*id.* at ¶ 25]. Further, Plaintiff's counsel avers they will be responsible for overseeing the administering of the settlement should the court approve the Settlement Agreement. *See* [*id.* at ¶ 23]. I find that the first *Johnson* factor weighs in favor of Plaintiff's requested fee award.

#### 2.  The Novelty and Difficulty of the Questions Presented (Factor 2)

Plaintiff's counsel contends that the novelty and difficulty of the question of liability supports the fee award sought, because "Plaintiff would have to overcome Defendants' defense that members of the collective action were exempt professional employees by showing that Defendants' pay scheme, which allegedly deprived clinicians of their full salary if they did not meet their productivity quota and exhaust their available paid time off, failed to meet the salary or fee basis tests under the FLSA." [#46 at 6]. According to Plaintiff, "No court has addressed this precise issue, and the ones that have addressed similar issues are non-precedential in this district." [*Id.*]. This factor therefore weighs in favor of the requested award. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F.

Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

### 3. Skill Required and Experience of Plaintiff's Counsel (Factors 3 and 9)

This court will consider the third and ninth *Johnson* factors together given their similarity. *See id.* Plaintiff's counsel attests that they are each have "significant experience prosecuting complex wage and hour class and collective actions," in cases spread across the country. *See* [#46-1 at ¶¶ 3-10; #46-2; #46-3]. Given the work to date, including the negotiation of a structured settlement in this matter, this court finds that these factors weigh in favor of the requested attorneys' fees.

### 4. Preclusion of Other Employment (Factor 4)

Plaintiff's counsel contends that, despite the small number of putative opt-in plaintiffs, they still put forth a significant number of hours in litigating this matter, which precluded other work. [#46 at 7; #46-1 at ¶¶ 15, 18-19, 23-27]. Courts have recognized that attorneys taking FLSA collective action cases may be "precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages." *See generally Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013). Thus, this factor weighs in favor of the requested fee.

13

### 5. The Customary Fee, Fixed or Contingent Nature of the Fee, and Awards in Similar Cases (Factors 5, 6, and 12)

This court will consider Factors 5, 6, and 12 together because they each concern the percentage of the fee awarded in the Settlement Agreement and the reasonableness of that fee as compared to other cases. As mentioned, the award of attorneys' fees is 35% (excluding costs) or 36.5% (including costs) of the total settlement sum. "Courts in this district have recognized that the customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Faulkner*, 2020 WL 550592, at *4 (brackets and internal quotation marks omitted). Further, courts in this District have found reasonable attorneys' fees awards between 20-50% of the common settlement fund. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *6 (finding reasonable attorneys' fees between 20-50% of the common fund settlement); *Anderson v. Merit Energy Co.*, No. CIV.07CV00916LTBBNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009) (explaining that customary contingency fee arrangements for common fund settlements is approximately 33%). Because Plaintiff's counsel accepted this matter on a contingent basis, and because the total 36.5% is similar to other awards in this District, I find this factor favors the requested aware of attorneys' fees. *See Swanson v. Cathedral Energy Servs., Inc.*, No. 17-CV-01578-DDD, 2019 WL 4858453, at *3 (D. Colo. Oct. 2, 2019) ("Here, the contingency payment of 36% of the fund is reasonable.").

### 6. Amount Involved and Results Obtained (Factor 8)

Plaintiff's counsel attests that the "settlement provides substantial cash payments to the Plaintiff and eight Potential Opt-In Plaintiffs, resulting in an average settlement distribution of approximately $8,339.19 per individual, net of attorneys' fees, litigation costs, settlement administration expenses, and the service payment." [#46 at 9 (citing

14

[#46-1 at ¶¶ 12-14])]. Further, Plaintiff's counsel contends this amount "represents a significant portion of the alleged unpaid wages," and the Settlement Agreement does not release any claim not asserted herein that the putative opt-in Plaintiffs may have against Defendants. *See* [#46 at 9-10]. I find this factor weighs in favor of the requested attorneys' fees. *See Faulkner*, 2020 WL 550592, at *5 (approving "a net recovery for the four plaintiffs ranging from $2,535.24 to $12,396.44.").

### 7. The Undesirability of the Case (Factor 10)

Plaintiff's counsel represents that "[t]he time and effort expended in this case and the complexity of the issues would make it undesirable to many attorneys, especially given that the case has been litigated on a contingency fee basis." [#46 at 10]. This court sees no reason to discredit this assertion, and therefore finds that this factors weighs in favor of the requested award. *See In re Qwest*, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

### 8. Balance of *Johnson* Factors

On balance, the relevant *Johnson* factors—Factors 1, 2, 3, 4, 5, 6, 8, 9, 10, 12—weigh in favor of the reasonableness of the requested attorneys' fees and costs.

### B. Lodestar Crosscheck

"Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount." *Jose Blanco v. Xtreme Drilling & Coil Services, Inc.*, No. 16-CV-00249-PAB-SKC, 2020 WL 4041456, at *7 (D. Colo. July 17, 2020).[3] Plaintiff's counsel seeks $47,447.32 in combined attorneys' fees and costs

---

[3] The Colorado Court of Appeals has stated that, when "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel." *Brody v. Hellman*, 167 P.3d 192, 204 (Colo. App. 2007).

15

for approximately 199.2 hours spent on the litigation, with a .50 multiplier on their $94,315.00 lodestar amount. [#46-1 at ¶¶ 19, 23-27].

Plaintiff's counsel provides the breakdown for their lodestar amount as follows:

| Attorney | Rate | Cumulative Hours | Lodestar |
|---|---|---|---|
| Becvar, Teresa (Partner) | $500.00 | 132.4 | $66,200.00 |
| Shannon, Megan (Associate) | $350.00 | 31.6 | $11,060.00 |
| Gonzales, Brian (Founding Partner, The Law Offices of Brian Gonzales, PLLC) | $550.00 | 17.3 | $9,515.00 |
| Zouras, James (Founding Partner, Stephan Zouras, LLP) | $600.00 | 9.9 | $5,940.00 |
| Legal Assistants | $200.00 | 8.0 | $1,600.00 |
| **Grand Total** | | 199.2 | $94,315.00 |

They attest that they "billed for activities including investigating the claims, drafting the complaint, reviewing hundreds of pages of pay records and home health visit data, attending meetings and conferences, preparing damages models, participating in settlement negotiations, drafting the stipulation for conditional certification, negotiating and drafting the Settlement Agreement, and working with defense counsel to ensure approval of the settlement," and that they spent significant time and resources over the 18-month life span of this case to resolve it. [#46-1 at ¶¶ 23-24]. Further, Plaintiff's counsel suggests that their billable rates between $200 and $600 per hour are within

16

reasonable rates charged by comparable attorneys across the country. [*Id.* at ¶ 28; #46-4].

Courts in this District have found rates between $200 and $600 per hour reasonable in FLSA collective actions like this one. *See, e.g.*, *Prim v. Ensign United States Drilling, Inc.*, No. 15-CV-02156-PAB-KMT, 2019 WL 4751788, at *7 (D. Colo. Sept. 30, 2019) ("The Court has previously found that an $600 hourly rate charged by class counsel was generally consistent with the rates charged in this district." (citing *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018); *Shaw*, 2015 WL 1867861, at *8 (approving hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation))); *Faulkner*, 2020 WL 550592, at *6 ("The hourly rate charged by class counsel, ranging from $150 to $600 per hour, is also generally consistent with the rates charged in other cases in this district." (internal citation omitted)). Further, the .50 multiplier is lower than those found reasonable in this District. *See Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6). Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1) The Joint Motion for Approval of Settlement Agreement [#41] is **GRANTED;** and

(2) The Clerk of the Court is **DIRECTED to TERMINATE** the case.

17

Dated: July 22, 2020

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge